## S. B. LOGAN v. S. T. NEILL.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 10, 1889—Decided October 7, 1889.
[To be reported.]

1. If one who has but an inchoate or imperfect title to land conveys the land to another by deed of general warranty, and subsequently acquires a good title thereto, the latter title will inure to the benefit of his vendee.
2. A purchaser of land from one who has no deed therefor, in his possession or upon record, without notice that the title is actually in another, must appear to have acted not only in good faith but with extreme vigilance, for equity will refuse to protect the careless and slothful.
(a) A plaintiff in ejectment knew when he purchased the title to land under which he claimed, that his vendor had no deed therefor in his possession and none upon record; he knew also that the defendant held a deed from one Nesmith under which he claimed title.
(b) The deed from Nesmith to the defendant would have disclosed that the title of plaintiff's vendor had been conveyed by him to Nesmith nearly twenty years before, but, though the plaintiff had inquiry made of Nesmith, he had none made of the defendant.
3. In such case, the plaintiff, when he purchased, was put upon inquiry as to the existence, whereabouts and condition of the deed upon which his vendor's title depended, and was affected with notice of whatever the deed in the defendant's possession would have disclosed to him.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 337 January Term 1889, Sup. Ct.; court below, No. 74 March Term 1886, C. P.

On February 16, 1886, S. T. Neill brought ejectment against S. B. Logan, to recover fifty acres of land in the southwest corner of tract No. 41, in Kinzua township. The defendant

was in possession under a lease for oil purposes from one U. G. Hoyt, and pleaded not guilty. On January 3, 1887, the parties entered into an agreement submitting the cause to the decision of the court, without trial by jury, under the act of April 22, 1874, P. L. 109.

On July 23, 1888, after testimony taken and argument, the court, Brown, P. J., filed a decision which, as modified after exceptions filed, was as follows:

FINDINGS OF FACT.

The plaintiff claims fifty acres of land in the southwest corner of tract 41, Kinzua township. Joseph A. Neill, the brother of the plaintiff, purchased the tract at the treasurer's sales of unseated lands on June 13, 1864. The treasurer's deed is dated June 13, 1864, and was recorded May 29, 1885. June 2, 1866, Joseph A. Neill, by writing on the treasurer's deed, assigned his right and interest to Benjamin Nesmith. The assignment was recorded May 29, 1885. By deed dated March 20, 1885, recorded April 14, 1885, Joseph A. Neill conveyed the tract to the plaintiff, in consideration of a credit of $500 on a pre-existing indebtedness, and a declaration of trust to the wife of the grantor for the one half of the tract, which declaration about two weeks afterward was surrendered to the. plaintiff, in consideration of the one half interest in the fifty acres of land in Southwest township, transferred by the plaintiff to said Joseph A. Neill.

On June 11, 1866, tract No. 41 was sold by the treasurer and deeded to Ozro Nesmith, the sale being for the unseated tax of 1864. The treasurer's deed to Ozro Nesmith was recorded June 6, 1868. March 16, 1885, Ozro Nesmith and wife made a quit-claim deed of their interests to Joseph A. Neill, which deed was recorded March 25, 1885. The consideration recited in the quit-claim is $187, but the real and only consideration was the cancellation by Neill of the surplus bond given by said Ozro, on his purchase at the treasurer's sale of 1866. The plaintiff claims to recover the land in said suit under the treasurer's deed to Joseph A. Neill, dated June 13, 1864, and under the treasurer's deed to Ozro Nesmith dated June 11, 1866.

The defendant was in possession as lessee under Uriah G.

Hoyt. On June 8, 1857, one D. C. Hook and wife made a deed of tract No. 41 to John Geer; on October 3, 1857, John Geer assigned the undivided one half of the same to R. E. Geer, and on October 19, 1864, John and R. E. Geer assigned all their right to the before mentioned Benjamin Nesmith, but it does not appear that Hook and wife or the Geers ever had any title or interest in the tract. By deed dated December 22, 1864, recorded June 23, 1865, Benjamin Nesmith conveyed the tract to said Hoyt. It does not appear that Nesmith then had any title, but on June 2, 1866, as before stated, he became the assignee of the right and title of Joseph A. Neill under the treasurer's deed of June 13, 1864.

On June 3, 1868, Ozro Nesmith, by assignment on the back of the treasurer's deed of June 11, 1866, transferred all his right and title thereunder to said Uriah G. Hoyt. The treasurer's deed to Ozro and the assignment to Hoyt was recorded June 6, 1868. At the time of making the assignment Ozro was about three months under the age of twenty-one years.

The facts attending the assignment by Ozro Nesmith to Hoyt were as follows: Hoyt, having as before stated, bought the tract from Benjamin Nesmith, the father of Ozro, came to Warren in 1868 to look after it. When he came to pay the taxes, he learned of the treasurer's sale to Ozro. In company with Benjamin he went to see Ozro. He told him he wished to redeem. Benjamin and Ozro figured up the taxes and penalty, amounting to about $40, or a trifle less. Hoyt paid the $40, whereupon Ozro executed the assignment eight days before the time of redemption had expired. The assignment from Ozro to Hoyt appears to have been in pursuance of Hoyt's express claim of a right to redeem, and we find that it was intended by the parties as a redemption from the tax sale of 1866. The evidence does not show any claim of a right to redeem by Benjamin Nesmith, when he procured the assignment from Joseph A. Neill of the treasurer's deed of June 13, 1864; and from the transaction itself no presumption arises that the assignment was intended as a redemption, and we find as a fact that it was intended as the acquisition of the inchoate title of Neill.

The plaintiff, when he took the deed of March 20, 1885, from Joseph A. Neill, had no notice, actual or constructive, of

the prior assignment made by Joseph A. Neill to Benjamin Nesmith.

We now [January 7, 1889,] find and place on the record as part of the findings of fact; that the assignment on the back of the treasurer's deed to Joseph A. Neill was made by said Neill to Benjamin Nesmith, in consideration of the payment of an amount that did not exceed the amount of the taxes and costs for which the land was sold, and the penalty of 25 per cent; and that the said assignment was executed and delivered with the deed to Benjamin Nesmith, before the expiration of the redemption period, and that said deed and assignment were in the custody of U. G. Hoyt and produced by him on the trial.

We now find, also, that S. T. Neill, the plaintiff, at the time of the conveyance by Joseph A. Neill to himself, had actual notice of the conveyance from Benjamin Nesmith to Hoyt, and that he also knew that Joseph A. Neill had no deed in his possession, and that no deed to him was recorded; that he directed inquiry to be made of Nesmith, but neither made nor requested any inquiry of Hoyt, and that the plaintiff at the time had actual notice of Hoyt's claim to the land; but in this connection we also find that the evidence failed to show that the plaintiff had notice at the time he took the conveyance from Joseph A. Neill, that Hoyt's claim to the land was based in whole, or in part, on the treasurer's deed to Joseph A. Neill, and the inquiry directed to be made of Nesmith failed to elicit any information that he claimed the land under Joseph A. Neill's treasurer's deed.

## PLAINTIFF'S POINTS.

1. The instrument dated June 2, 1886, from Joseph A. Neill to Benjamin Nesmith, containing the words "sell, assign and transfer" and stamped with a canceled United States internal revenue stamp, is in form a conveyance of all said Neill's "right, title, interest and claim" to the lot of land described and designated in the treasurer's deed to said Neill, and there is no sufficient evidence in the case to change or affect the character of said instrument as a deed of conveyance.

Answer: Affirmed.[1]

2. The surrender and relinquishment by S. T. Neill of so much of the indebtedness to him from Joseph A. Neill as was made the consideration for the deed to him from Joseph A.

Neill, for the land in controversy, is a valuable consideration, within the recording acts, as to the undivided one half of said land; and, if the conveyance to the plaintiff of the said land was otherwise made in good faith, and without notice to the plaintiff of the former unrecorded conveyance of said land to Benjamin Nesmith by said Joseph A. Neill, the deed would entitle him to recover under the treasurer's title to Neill the undivided one half of the land in controversy.

Answer: Affirmed.[2]

3. The making of the declaration of trust in favor of Mrs. Neill, a creditor of her husband Joseph A. Neill, and the surrender of that declaration to S. T. Neill for his land in Southwest township, for which he made a deed to the purchaser whom Joseph A. Neill procured, and the proceeds of the sale thereof were delivered to said Joseph A. Neill, is a valuable consideration, within the recording acts, as to the other undivided one half of said land; and, if the conveyance to the plaintiff was otherwise made in good faith, and without notice to the plaintiff of the former unrecorded conveyance of said land to Benjamin Nesmith by said Joseph A. Neill, the deed would entitle him to recover, under the treasurer's title to Neill, the other undivided one half of the land in controversy.

Answer: Affirmed.[3]

4. The treasurer's sale of June 11, 1886, to Ozro Nesmith of tract 41, which includes the land in controversy, made during the latter's minority, was not void, but voidable only by said Nesmith after his arrival at his majority.

Answer: Declined.

5. The assignment from Ozro Nesmith to U. G. Hoyt of his treasurer's title, being made by him during his minority, was voidable by him, and there is no evidence in the case of a ratification by him of said assignment after his arrival at the age of twenty-one years.

Answer: Declined.

6. The conveyance of Ozro Nesmith to Joseph A. Neill of his treasurer's title to tract 41, made after he was twenty-one years of age, was a disaffirmance of his former assignment of the same to U. G. Hoyt, made during his minority, and the said Ozro Nesmith had a lawful right to make the former and repudiate the latter assignment.

Decision of Court below.

Answer: Declined.

7. The assignment by Ozro Nesmith to Joseph A. Neill of his treasurer's title, having been made after his arrival at the age of twenty-one years, was a ratification by him of the treasurer's sale to him of tract 41, the land in dispute, during his minority.

Answer: Declined.

8. Under all the evidence in the case the plaintiff is entitled to recover.

Answer: Affirmed.[4]

The plaintiff's 4th, 5th, 6th and 7th points have reference to the treasurer's sale to Ozro Nesmith, and having found as a fact that such sale has no validity, by reason of the redemption, we decline to answer them as requested by the plaintiff.

DEFENDANT'S POINTS.

1. That the title conveyed by the treasurer to Joseph A. Neill never became absolute in said Neill, having been assigned by him before the expiration of the redemption period to Benjamin Nesmith, the former owner, or claimant.

Answer: Refused.[5]

2. That by the estoppel of the warranty in the deed from Nesmith to U. G. Hoyt, the defendant's lessor, the title of Neill became vested in said Hoyt.

Answer: Affirmed.[6]

3. That under the admitted facts, the plaintiff cannot claim as an innocent purchaser for value and without notice.

Answer: Refused.[7]

4. That the transaction between Hoyt and Ozro Nesmith was in effect a redemption, and no title was left in said Nesmith thereafter, whether he was at the time a minor or not.

Answer: Declined.

5. That if at the time of said transaction, the said Nesmith was a minor, then the surplus bond given by him to the treasurer was void as a personal obligation, and the plaintiff cannot recover on the tax title against the owner or claimant in possession.

Answer: Declined.

6. That the right to avoid his acts during infancy is a personal one, and the making of the quit-claim deed to Joseph A. Neill, under the circumstances proved, was not such avoidance.

Decision of Court below.

Answer: Declined.

7. That under all the evidence the plaintiff cannot recover.

Answer: Refused.[8]

The defendant's 4th, 5th and 6th points refer to the treasurer's sale to Ozro Nesmith, and having found that such sale has no validity, by reason of the redemption therefrom, we decline to answer them as requested by the defendant.

The defendant's 2d point is affirmed, but the title thus vested in Hoyt is not available against the plaintiff, a bona fide purchaser for value, of the treasurer's title to Joseph A. Neill, without notice of said Neill's prior assignment to Nesmith.[6]

## CONCLUSIONS OF LAW.

That the treasurer's sale and deed to Joseph A. Neill dated June 13, 1864, vested an inchoate title in said Neill; that this title passed to Benjamin Nesmith by virtue of the assignment of June 2, 1866, and became a perfect title by the expiration of the time of redemption; that the title thus acquired by Nesmith inured to the use and benefit of Uriah G. Hoyt, his heirs and assigns by reason of the deed of general warranty from said Nesmith to said Hoyt of December 22, 1864; [that the plaintiff was a bona fide purchaser for value from Joseph A. Neill of the tract of land which includes the land in dispute, and that he became such purchaser by the deed of March 20, 1885, recorded April 14, 1885, without any notice of the assignment made by said Neill to Benjamin Nesmith on June 2, 1885, and that the plaintiff is entitled to recover the land in said suit.][9]

And now, July 23, 1888, unless exceptions be filed to the findings of fact, or conclusions of law, within the time prescribed by law, the prothonotary will enter judgment in favor of the plaintiff and against the defendant for the land described in the writ.

On January 7, 1889, various exceptions filed to the decision having been heard and overruled, judgment was entered for the plaintiff for the land described in the writ, when the defendant took this writ assigning as error:

1-4. The answers to plaintiff's points.[1 to 4]

5-8. The answers to defendant's points.[5 to 8]

9. The portion of the conclusions of law in [ ] [9]

*Mr. Charles H. Noyes* (with him *Mr. Watson D. Hinckley*), for the plaintiff in error:

1. It has always been held that to entitle a purchaser to protection under the recording acts, he must not only pay value, but he must purchase in good faith: 2 White & Tudor, L. C. in Eq., 37; Henry v. Morgan, 2 Binn. 497; Spackman v. Ott, 65 Pa. 131. The first essential to the plea of a bona fide purchaser is, that the vendor had or appeared to have a good title. The purchaser must believe that the vendor has a good title, in good faith and upon sufficient evidence. The title must be apparently perfect, good at law, a vested estate in fee simple: Basset v. Nosworthy, 2 White & Tudor, L. C. in Eq., 66; Chew v. Barnet, 11 S. & R. 389; Boon v. Chilles, 10 Pet. 177. The principle is carried so far, that even under the recording acts a purchaser of an equitable title is held not to be within their protection, because the title purchased, being only equitable, is imperfect on its face: 2 White & Tudor, L. C. in Eq., 67; Chew v. Barnet, supra; Reed v. Dickey, 2 W. 459; Sergeant v. Ingersoll, 7 Pa. 340; s. c. 15 Pa. 343; Kramer v. Arthurs, 7 Pa. 165. The rule, caveat emptor, applies to plaintiff. If papers are lacking, necessary to make out a title in his grantor, he should be held to have taken the risk of their non-existence, and of all they might disclose when they turned up.

2. The fact that Hoyt, after the conveyance from J. A. Neill to plaintiff, placed the deed and assignment he held on record, cannot help the plaintiff's title. Had this not been done, the plaintiff could not have made out any title whatever, without offering the deed with the assignment on its back. But we submit that he must be regarded as having notice of all that such an inspection of the paper through which he traced title would disclose. "A purchaser is charged with notice of all facts appearing upon the muniments of title which it was necessary for him to inspect:" 3 Washb. on Real P., § 63, *596. "In all cases where a purchaser cannot make out a title but by a deed which leads him to another fact, whether by description of the parties, recital, or otherwise, he will be deemed conusant thereof, for it was crassa negligentia that he sought not after it; and for the same reason, if a purchaser have notice of a deed, he is bound by all its contents:" Sugden

on Vendors, *775, § 45; Brush v. Ware, 15 Pet. 93. The
plaintiff was bound to discover this deed and examine it, be-
fore he could assume that his brother had a good title. What
it would have shown to a prudent man, he is charged with
knowing: Steckel v. Desh, 2 Penny. 308; s. c. 12 W. N. 131.

3. But if it is not enough that plaintiff purchased from one
whôse title was defective on its face, or rather, entirely want-
ing, and that he cannot make out title at all, save through a
deed which, at the time of his purchase, was neutralized by an
assignment on its back, these things, taken in connection with
the other facts and circumstances found by the court, are cer-
tainly enough to charge him with notice. The court found as
a fact that at the time of making the purchase, the plaintiff
had actual notice of Hoyt's claim to the land; that he had no-
tice also of the deed from Nesmith to Hoyt, which involved
notice that Hoyt was the owner of the land during the last
eighteen months of the period of redemption from the Neill
tax sale, for the deed was dated December 22, 1864, six months
after the sale. It is also found that plaintiff directed inquiry
to be made of Nesmith, but neither made nor requested any to
be made of Hoyt. Omitting all inquiry as to the title deed,
this alone was sufficient to raise a presumption of bad faith:
Worthington v. Morgan, 16 Sim. 547; Sergeant v. Ingersoll,
7 Pa. 345; Parke v. Neeley, 90 Pa. 52; Leonard's App., 94
Pa. 168.

*Mr. D. I. Ball* (with him *Mr. Charles Dinsmoor*), for the
defendant in error:

"If conveyances from one stranger [to the title] to another
would be notice to all the world, miserable would be the situa-
tion of the purchaser:" Duncan, J., in Keller v. Nutz, 5 S.
& R. 253.

1. Under all the facts and circumstances in evidence, there
was not such negligence on the part of the plaintiff as affected
his title as a bona fide purchaser. The land was unseated
and no one in possession, Logan's lease having been execut-
ed in 1886; the treasurer's deed appeared to have been duly
acknowledged and recorded in the prothonotary's office; at
the time of the purchase, J. A. Neill, plaintiff's vendor, was
many miles from home, where his deed would ordinarily be, and

there was nothing to suggest or create a suspicion that the deed was in the possession of a stranger; the inquiry made of B. Nesmith showed all the precaution that could be required of a purchaser; the claimant Hoyt was a non-resident, inaccessible to inquiry, and also was personally a stranger to both the plaintiff and J. A. Neill, as well as a stranger to their title, and the putting on record by Hoyt of the tax deed and assignment of O. Nesmith was misleading, if he was intending to claim through the tax title of J. A. Neill.

2. The absence of title deeds is not such culpable negligence as carries with it any presumption of notice to a purchaser of any equity, or lien, or unrecorded title: 2 Pomeroy's Eq., §§ 612, 613. " The recording of subsequent titles by grantees, unconnected by the record with the original title, will not affect a purchaser: " Lightner v. Mooney, 10 W. 407. " In Pennsylvania, every written title may be registered, and where an occupant announces but one of his titles, he does an act which, for its tendency to mislead, ought to postpone the other. By exhibiting a conveyance to which, by his own showing, his possession may be referred, he does what he can to turn a purchaser from the direct path of inquiry." GIBSON, C. J., in Woods v. Farmere, 7 W. 384. To same effect, see Plumer v. Robertson, 6 S. & R. 179. What could be more applicable than this rule to the conduct of Hoyt?

3. The plaintiff below was not affected with notice of an assignment by J. A. Neill to B. Nesmith on the back of the treasurer's deed. In Boggs v. Varner, 6 W. & S. 469; Scott v. Gallagher, 14 S. & R. 333; McCandless v. Blakely, 12 W. N. 510, and many other cases that can be cited, we find that a purchaser is not always affected with notice from matters appearing even upon the face of the deed or other instrument. In Hamilton v. Royse, 2 Sch. & Lef. 327, cited with approval, in 1 Story Eq., § 400, note, it is held: " If a man purchase an estate under a deed which happens also to relate to other lands not comprised in that purchase, and afterward he purchases the other land, to which an apparent title is made independent of that deed, the former notice of the deed will not affect him in the second transaction, for he was not bound to carry in his recollection those parts of a deed which had no relation to the particular purchase he was then about to make."

OPINION, MR. JUSTICE STERRETT:

Trial by jury was waived, and the case submitted to the court under the provisions of the act of April 22, 1874.

Plaintiff below claimed under two sales for taxes, one of which was evidenced by treasurer's deed June 13, 1864, to J. A. Neill, who by deed March 20, 1885, recorded April 14, 1885, conveyed to his brother S. T. Neill, plaintiff below. The treasurer's deed was not recorded until May 29, 1885. The other sale was evidenced by treasurer's deed, June 11, 1866, to Ozro Nesmith, who on March 16, 1885, executed a quit-claim deed to J. A. Neill, who four days thereafter conveyed to his said brother. As to the last-mentioned title, however, the court found that an assignment, dated June 3, 1868, by Ozro Nesmith to Uriah G. Hoyt, the lessor of defendant below, was intended by the parties as a redemption from the tax sale of June 11, 1866, and that such was its legal effect. That finding virtually eliminates from the case the second tax sale, and restricts the claim of plaintiff below to the first-mentioned tax title.

Defendant relied mainly on the first tax sale, and in support of his title thereunder gave in evidence the general warranty deed of Benjamin Nesmith and wife, December 22, 1864, recorded June 23, 1865, to his landlord Uriah G. Hoyt. Also, deed of assignment, J. A. Neill to Benjamin Nesmith, June 2, 1866, indorsed on the first-mentioned treasurer's deed to said Neill, recorded May 29, 1885. The court rightly held that the treasurer's sale and deed of June 13, 1864, vested an inchoate title in J. A. Neill, which, by virtue of his assignment aforesaid, passed to Benjamin Nesmith, and by expiration of the time for redemption became a perfect title; that the title thus acquired by Nesmith inured to the use and benefit of Hoyt, his heirs and assigns, by reason of the general warranty contained in the deed of Nesmith and wife to him. The learned judge found that the assignment of J. A. Neill indorsed on the first treasurer's deed was duly executed, and, with the deed itself, delivered to Benjamin Nesmith before expiration of the time for redemption; and that said deed and assignment passed into the possession of Hoyt, and were by him produced at the trial. He further found that plaintiff below at the time of the conveyance by his brother J. A. Neill,

to himself, in March, 1885, had actual knowledge of the conveyance from Benjamin Nesmith to Hoyt; and also knew that J. A. Neill had no deed in his possession, and that no deed to him was then recorded; that he directed inquiry to be made of Benjamin Nesmith, but neither made nor requested any inquiry of Hoyt, who, as he actually knew, at that time claimed to own the land in controversy. Other facts, of subordinate importance, also found by the learned judge, appear in the record of his findings.

Notwithstanding the foregoing and other findings of fact and conclusions of law, the learned judge held that plaintiff below, when he took the deed of March 20, 1885, from his brother J. A. Neill, had no notice, actual or constructive, of the prior assignment to Benjamin Nesmith indorsed on the treasurer's deed, and therefore he was a bona fide purchaser for value, without notice, and as such entitled to recover. In that we think there was error.

The facts found by the court below were sufficient to have put the plaintiff on inquiry as to the existence, whereabouts, and condition of the treasurer's deed, upon which the title his brother proposed to convey depended. Recognizing the propriety of such inquiry, he directed it to be made of Nesmith, but he neither made nor requested any inquiry to be made of Hoyt, notwithstanding he then knew that the latter claimed the land and had a general warranty deed from Nesmith therefor. If inquiry had been made of Hoyt, it doubtless would have developed the fact that he held the treasurer's deed with J. A. Neill's assignment indorsed thereon, and that said Neill had thereby disposed of his interest in the land nearly twenty years before.

It clearly appears that when plaintiff below took the conveyance from his brother in March, 1885, and for nearly twenty years prior thereto, defendant's lessor, Uriah G. Hoyt, owned the land in dispute. He had a deed for it from Benjamin Nesmith recorded in June, 1865. He had redeemed it from tax sale to Ozro Nesmith in 1866, taking a paper in the form of an assignment on the back of the treasurer's deed, and recording both in June, 1868. He had also in his possession the treasurer's deed to J. A. Neill with his assignment to Benjamin Nesmith indorsed thereon, but that deed was not re-

corded until May 29, 1885, about six weeks after the deed of plaintiff below from his brother was recorded. On the other hand, it is equally clear that plaintiff's vendor, J. A. Neill, had no title to the land. It does not appear that he was ever in possession of it, or exercised any acts of ownership over it, by paying taxes or otherwise. There was no conveyance to him on record, nor had he in his possession any writing indicating any title or claim, except the quit-claim deed from Ozro Nesmith, which he obtained with knowledge of Nesmith's former recorded assignment to Hoyt. Under such circumstances and with such knowledge as he is shown to have had, it behooved plaintiff below to act not only in good faith but with extreme vigilance: Sergeant v. Ingersoll, 7 Pa. 340, 345. As was said in that case, "A purchaser without notice must appear to have acted not only in good faith but with extreme vigilance, for equity refuses to protect the careless and the slothful." The fact that J. A. Neill had been at least passive as to his claim, for nearly twenty years, and had no evidence of title in his possession, was enough to make inquiry a duty; and the fact that Hoyt had been the active claimant of the land, during all these years, and was still claiming it, was sufficient to indicate the quarter in which inquiry should have been made. When inquiry becomes a duty, neglect to make it visits the negligent party with constructive notice of such facts as a proper discharge of the duty would have disclosed. As has already been stated, if proper inquiry had been made of Hoyt, it would have been discovered that J. A. Neill had no title to convey.

From what has been said it follows that the fourth, sixth, seventh, eighth, and ninth specifications of error are sustained.

Judgment reversed, and now judgment is entered in favor of the defendant below.