879 A.2d 178

**FIRST CITIZENS NATIONAL BANK, Appellant,**

**v.**

**Arthur W. SHERWOOD and Bradford County Recorder of Deeds, Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2003.

Decided July 20, 2005.

William Alan Shaw, Esq., Richard R. Jennings, Esq., Sayre, for First Citizens National Bank.

Joseph G. Ferguson, Esq., Scranton, for Arthur W. Sherwood, M.D.

Mark William Smith, Esq., Towanda, for Bradford County Recorder of Deeds.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Chief Justice CAPPY.

This is a statutory construction matter. Specifically, we are asked to determine whether a purchaser of real property has constructive notice of a mortgage when the mortgage is properly recorded but defectively indexed. For the reasons that follow, we conclude that the applicable statutory authority mandates that a purchaser in such an instance is deemed to have constructive notice. Accordingly, we reverse the order of the Superior Court.

First Citizens National Bank ("First Citizens") bought a piece of real property, which had been owned by J. Joel Turrell as Trustee for Genevieve Van Noy ("Turrell"), by virtue of a Sheriff's Deed. Prior to the purchase, First Citizens searched the mortgage index and discovered no encumbrances. After the sale was completed, First Citizens learned that Turrell had executed a mortgage in favor of Arthur W. Sherwood ("Sherwood"). The Bradford County Recorder of Deeds had properly recorded the Sherwood–Turrell mortgage. The mortgage was misindexed, however. Instead of being indexed under Turrell's name, it was indexed under Van Noy's name. Apparently, First Citizens had not cross-checked the mortgage index under Van Noy's name as well as Turrell's and thus did not discover the mortgage.

Upon discovering the Sherwood–Turrell mortgage, First Citizens filed an action to quiet title. The trial court granted summary judgment in favor of First Citizens. It held that when a lien had been improperly indexed, subsequent purchasers would not be deemed to have constructive notice of the lien. Accordingly, as the Sherwood–Turrell mortgage had

been improperly indexed, the trial court concluded that First Citizens would not be deemed to have constructive notice of it.

Sherwood appealed. The Superior Court, relying heavily on case law from other jurisdictions, reasoned that a subsequent purchaser shall not be deemed to have notice of a prior lien so long as a "diligent search" would not have uncovered the lien. *First Citizens Nat'l Bank v. Sherwood,* 817 A.2d 501, 504–05 (Pa.Super.Ct.2003). The Superior Court held that the question of diligence is a factual one, dependent upon how accessible the records were at the time the search was conducted. Of import to the Superior Court was whether the particular county's records were computerized or not. As the trial court had not conducted a factual inquiry into how accessible Bradford County's records were, the Superior Court remanded this matter to the trial court for further proceedings.[1]

■ First Citizens then filed a Petition for Allowance of Appeal, and we granted allocatur. The sole issue before this court is whether a purchaser may be deemed to have constructive notice of the existence of a mortgage when the mortgage is properly recorded but is defectively indexed. As this is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Buffalo Township v. Jones,* 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

■ Our analysis focuses on two statutes. The first states that when a written agreement relating to real property is recorded, "[t]he legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers...." 21 P.S. § 357.[2] Section 357 goes on to state

---

1. The Superior Court neglected to note in its order that the trial court's order was vacated. This was clearly an oversight on the lower court's part. Without vacating the order of the trial court, the trial court's order would stay in effect. Yet, the thrust of the Superior Court's opinion was obviously that the trial court's original order was to have no effect. Accordingly, as this was clearly an oversight by the Superior Court, we will treat the Superior Court's order as if it had vacated the trial court's order.

2. We note that First Citizens fleetingly argues that 21 P.S. § 357 does not apply to this matter. Our esteemed colleague, Mr. Justice Eakin, also contends that § 357 does not apply. Mr. Justice Eakin offers a

that "the rights of the subsequent purchasers ... shall be limited thereby with the same force and effect as if said subsequent purchasers ... had actually joined in the execution of the [mortgage]. . . ." The second statute applies in those instances when a mortgage is properly indexed, and provides that such proper indexing "shall be notice to all persons of recording of the same." 16 P.S. § 9853.

In applying these statutes to the matter *sub judice*, we are guided by the principles of our Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The polestar in construing statutes is that where the words of a statute are clear and unambiguous, we must apply them as written. *See* 1 Pa.C.S. § 1921(b). The judiciary is not granted the liberty to disregard the plain words "under the pretext of pursuing its spirit." *Id.* Furthermore, in the event that two statutes are in conflict, "the statute latest in date of final enactment shall prevail." 1 Pa.C.S. § 1936.

detailed analysis of his position. He states that 21 P.S. § 356 provides that only rights or privileges to real property which are of a "permanent nature" are subject to § 357's provision. He goes on to reason that rights created by mortgages are not permanent in nature and thus the provisions of § 357 cannot apply to mortgages.

While there is some surface appeal to our learned colleague's argument, we find that we cannot adopt it as it is in tension with our recent decision in *Pines v. Farrell*, 577 Pa. 564, 848 A.2d 94 (2004). In *Pines*, this court wrestled with defining the nature of a mortgage. We recognized that there were two schools of thought on the matter. One view, called the "title theory", deems a mortgage to be a conveyance of land, granting the mortgagee (i.e., the entity which is loaning the money) title in the land. *Pines*, 848 A.2d at 99. The "lien theory", however, stated that a mortgage did not grant the mortgagee title to the property, but merely a security interest. *Id.* After a detailed recitation of the history of these two competing schools of thought, *Pines* unambiguously endorsed the title theory. We stated that "mortgages traditionally have been treated as conveyances. In all questions *upon the recording acts*, the mortgage is spoken of as a conveyance of land." *Id.* at 100 (citations and internal quotation marks omitted; emphasis supplied).

In light of our decision in *Pines*, we find it difficult to agree with the view taken by our learned colleague in the matter *sub judice*. A transfer of title is no insubstantial thing, but rather resembles a right or privilege which is permanent in nature. The fact that at one point the mortgagor may fulfill the obligations of the mortgage, and thereby receive title to the mortgaged property, does not negate the fact that mortgaging the property transfers the title to the mortgagee.

■ In applying these principles, we conclude that the language of 21 P.S. § 357 is plain and unambiguous. Per § 357, the legal effect of the recording of a written agreement such as a mortgage is to give subsequent purchasers constructive notice of the mortgage. There is no ambiguity in the statute. There is no scope for us to read into that statute an equitable exception whereby a subsequent purchaser may be excused from constructive notice when the mortgage was properly recorded but improperly indexed. In applying 21 P.S. § 357 to the matter *sub judice,* First Citizens must be deemed to have constructive notice of the Sherwood–Turrell mortgage as it is beyond cavil that the Sherwood–Turrell mortgage was properly recorded.

First Citizens attempts to avoid this conclusion via two separate arguments. First, it argues that 16 P.S. § 9853 supports its position that a subsequent purchaser has no notice of a mortgage where that mortgage is improperly indexed, regardless of whether the mortgage was properly recorded. As noted by First Citizens, § 9853 states that a properly indexed mortgage shall be notice to all persons of the recording of the mortgage. First Citizens argues that if a proper indexing is notice to all persons, then the obverse is true: a subsequent purchaser presumptively has *no* notice where a mortgage is improperly indexed.

This argument fails. First, 16 P.S. § 9853 does not create a negative inference—namely, § 9853 does not stand for the proposition that a subsequent purchaser *per se* lacks notice where a mortgage is improperly indexed.

Furthermore, even if this were a logical interpretation of 16 P.S. § 9853, First Citizens would still not be entitled to relief. This is because such an interpretation of 16 P.S. § 9853 is squarely at odds with 21 P.S. § 357's dictate that proper recordation of a mortgage constitutes constructive notice of the mortgage to subsequent purchasers. Accordingly, even if we were to adopt First Citizens construction of 16 P.S. § 9853, then we would have to find that 21 P.S. § 357 and 16 P.S. § 9853 are in conflict with each other. Were we to find that the two statutes were in conflict, 21 P.S. § 357 would prevail

in any contest between the two because it was the statute enacted later in time.[3]  *See* 1 Pa.C.S. § 1936 (stating that in the event that two statutes are in conflict with one another, "the statute latest in date of final enactment shall prevail.").

First Citizens' next argument is that we cannot follow the plain language of 16 P.S. § 357 because it conflicts with *Prouty v. Marshall,* 225 Pa. 570, 74 A. 550 (1909).  In brief, this Court in *Prouty* declared that where a mortgage is defectively recorded and wrongly indexed, a purchaser of the mortgaged premises without actual notice is not chargeable with constructive notice of such a mortgage.

*Prouty* does not support First Citizens position.  First, the factual scenario in *Prouty* was quite different from that in the matter *sub judice.*  In *Prouty,* the mortgage in that instance was not only improperly indexed but also defectively recorded.  In this matter, it is without question that the mortgage was properly recorded.  Furthermore, even if *Prouty* could be read to stand for the proposition that a subsequent purchaser will not be deemed to have constructive notice of a properly recorded but improperly indexed mortgage, it does not control the outcome of this matter as such a putative holding was effectively abrogated when the Legislature promulgated 16 P.S. § 357.[4]

Finally, we address a concept that runs through First Citizens' arguments to this court.  This concept is that we should adopt First Citizens' position because it is sensible.  In essence, First Citizens invites us to find in its favor because it is prudent to charge a subsequent purchaser with constructive notice only in those situations where the mortgage is both properly recorded and properly indexed.

██  We cannot accept this invitation.  In addressing an issue of statutory construction, this court's power is limited. Where the Legislature has crafted a statute which is clear and

3.  21 P.S. § 357 was enacted into law in 1931;  16 P.S. § 9853 was enacted in 1875.

4.  We note that 16 P.S. § 356 was enacted subsequent to our decision in *Prouty.*

is squarely on point, we may not decline to apply it simply because we find that there are better policy options. Nor may we decline to follow an unambiguous statute on the basis that other jurisdictions have charted a different course with regard to the same issue.[5] To put it bluntly, it is not our role to disregard clear policy choices made by the Legislature merely because we may believe these choices to be poor. If the Legislature chooses to amend the applicable statutes to create a system as envisioned by First Citizens, it may do so. We, however, may not. *See Pap's A.M. v. City of Erie*, 553 Pa. 348, 719 A.2d 273, 281 (1998), *reversed on other grounds*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (judiciary may not rewrite legislative enactments; separation of powers doctrine confers such authority solely on the legislative branch).

In sum, we conclude that since the Sherwood–Turrell mortgage was properly recorded, then per 21 P.S. § 357 all subsequent purchasers are deemed to have constructive notice of it. Accordingly, the order of the Superior Court is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Former Justice LAMB did not participate in the decision of this case.

Justice EAKIN files a dissenting opinion in which Justice SAYLOR joins.

**5.** Although we may understand the frustration of the Superior Court in analyzing this matter, we are constrained to disapprove of its reliance on decisions from other jurisdictions with regard to this issue. As stated *supra*, the proper first step in analyzing this matter is to determine whether the language of the statutes is clear. While the Superior Court recognized that 21 P.S. § 357 and 16 P.S. § 9853 were implicated in this matter, it hastily abandoned its analysis of these statutes and turned instead to examining whether other jurisdictions declare that a subsequent purchaser has notice of a mortgage which has been improperly indexed. In divorcing itself from an analysis of the statutory law, the Superior Court clearly erred. As the language of 21 P.S. § 357 is clear and free from ambiguity, we must apply it; we may not avoid such an application on the basis that other jurisdictions have charted a different course.

474

Justice EAKIN, dissenting.

The majority's determination that 21 P.S. § 357 governs the outcome in this case is, in my judgment, erroneous; thus, I respectfully dissent.

First, § 357 does not apply to mortgage recording at all. It is found in Title 21 of Pennsylvania Statutes, titled "Deeds and Mortgages." Statutes involving these two related but quite independent subjects are then subdivided into separate chapters: Chapter 1 is entitled "Deeds and General Provisions"; Chapter 2 is entitled "Mortgages." Section 357, which the majority interprets and relies on to resolve this mortgage question, is found in Chapter 1, not Chapter 2. For issues regarding mortgages, Chapter 1 and § 357 do not presumptively or automatically control. *See* 1 Pa.C.S. § 1924 (headings prefixed to chapters of statute shall not be considered to control but may aid in construction).

Further, § 357 does not control as its very terms exclude mortgages. The Deeds Chapter places § 357 under the heading and sub-heading, respectively: "Registration and Recording: Necessity of Recording and Compulsory Recording." Under this same sub-heading is § 356, which the majority properly notes "establishes the scope of those documents to which § 357 applies...." Majority Op. at 469 n. 2, 879 A.2d at 180 n. 2 (citing *First Citizens Nat'l Bank v. Sherwood,* 817 A.2d 501, 504 n. 5 (Pa.Super.2003)). Section 356 establishes that § 357 applies to "[a]ll agreements in writing relating to real property ... by the terms whereof the parties executing the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature." *Id.* Section 357 immediately follows and states, "[t]he legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors ... of the fact of the granting of such rights...." *Id.,* § 357.

That is, for § 357 to apply, a mortgage must be an agreement to "grant, bargain, sell, or convey ... rights or privileges *of a permanent nature* pertaining to such real property...." *Id.,* § 356. A mortgage is not such a conveyance, for

a mortgage is not of a permanent nature—it is a document encumbering a property until a specified debt is repaid. While the average homeowner may come to think of their mortgage as almost permanent, it is at most a limited and provisional transfer.

Once the debt is paid, the encumbrance is gone—it is not "of a permanent nature." As this requirement is clear and unambiguous, *see* 1 Pa.C.S. § 1921(b), it must be applied. Thus, the majority's approval of the Superior Court's statement that § 357 applies to "all writings relating to real property," Majority Op., at 469 n. 2, 879 A.2d at 180 n. 2 (citation omitted), including mortgages is far too sweeping—it ignores the very words of the section itself—the writings must convey rights *of a permanent nature*. If we are to interpret this statute, let us not start with a truncated reading of the statute's terms—to give effect to all the statute's terms, as we must, we must ask if mortgages convey permanent rights in the property. Simply and most basically, they do not—when the obligation is paid, the mortgage is satisfied and terminated (on pain of statutory penalty, *see* 21 P.S. §§ 681, 682). Consideration of the entirety of § 357 shows unambiguously that it does not speak at all to the recording of mortgages, which are not and cannot be deemed "of a permanent nature."

Nor was it the intent of the legislature to apply this to mortgages. The purpose of recording a mortgage is to give notice to the world that a property is encumbered, but proper recording necessarily implies proper indexing, for that is where the world must go to get that notice. Imperfect indexing is imperfect notice-to hold that the mere recordation of a mortgage without proper indexing places an innocent party on constructive notice puts an undue, nay impossible, burden on that party. A subsequent purchaser simply cannot look at every one of the thousands of mortgages filed in the Recorder of Deed's office. That is why it is a longstanding principle that "the record is notice of just what it contains, no more and no less. The obligation of seeing that the record of an instrument is correct, must properly rest upon its holder."

*Prouty v. Marshall,* 225 Pa. 570, 74 A. 550, 552 (1909).[1] If the mortgage is misindexed, such that one who is bound to search for it does not know of its existence, one does not have notice of what the record contains. *See McArther v. City of Philadelphia Tax Review Bd.,* 116 Pa.Cmwlth. 139, 541 A.2d 415, 417 n. 1 (1988) (quoting *Logan v. Neill,* 128 Pa. 457, 18 A. 343, 344 (1889) ("When inquiry becomes a duty, neglect to make it visits the negligent party with constructive notice of such facts *as a proper discharge of the duty would have disclosed.*") (emphasis in original)).[2]

16 P.S. § 9851 requires the recorder of deeds of each county to establish and keep indexes for mortgages. A reading of § 9852 shows that the General Assembly intended recording and indexing to go hand in hand. *See Penn Title Ins. Co. v. Deshler,* 661 A.2d 481, 487 (Pa.Cmwlth.1995) ("We construe [§ ] 9851 to require three (3) elements in the recording of deeds and mortgages by a [recorder of deeds] . . .: 1) name of the grantor, 2) name of the grantee, and 3) volume and page of the recorded instrument."). Even if "proper recording" can be otherwise interpreted to require less than proper indexing, this is only "proper" insofar as it may protect one's title to land or priority of liens; however, it is not notice to the world. To hold that the recording of a mortgage without proper indexing is sufficient to give constructive notice to those who search the index produces an indefensible result. *See* 1 Pa.C.S. § 1922 (presumption in ascertaining intent of General Assembly in enacting statute is that result is

1. As §§ 356 and 357 do not apply to mortgages, the constructive notice provision of § 357 does not "effectively abrogate" *Prouty. See* Majority at 182. Section 357 certainly does not abrogate the basic and longstanding principles relied on in that case.

2. Absent actual notice, one may have been charged with having constructive notice of the mortgage, but this Court has stated:

   A party is on constructive notice of another's interest in real property where the party "could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate *indexes* in the office of the recorder of deeds."

   *Mid–State Bank & Trust Co. v. Globalnet Int'l, Inc.,* 557 Pa. 555, 735 A.2d 79, 85 (1999) (emphasis added) (citation omitted).

not intended to be absurd, impossible of execution, or unreasonable).

The duty of indexing mortgages and deeds is placed on the Recorder of Deeds, but as between the parties, the mortgagee ultimately bears the risk of improper indexing. Section 9853 specifically addresses the subject of notice: "[t]he entry of recorded deeds and mortgages *in said indexes,* respectively, shall be notice to all persons of recording of the same." 16 P.S. § 9853. Clearly, the absence of good indexing cannot be good notice. In order to protect its interest and place those who may later search on constructive notice, *see Globalnet, supra,* the mortgagee must bear the burden of checking the proper indexes after recordation to insure that the Recorder of Deeds properly indexed and recorded the mortgage. This is a small burden indeed for the mortgagee—it is an impossible burden to place on the public. It is the mortgagee who asks for the mortgage in return for advancing money. It is the mortgagee that files the mortgage in order to protect its security interest. *Prouty,* at 551 ("[A mortgagee] cannot hide behind the mistake of the recorder.").

> It is an easy matter for a mortgagee, or a grantee in each particular instance, either in person, *or by a representative,* to look at the record, and see that the instrument has been properly entered. . . . There is every reason why it should be made the duty of the mortgagee to see that his instrument is properly recorded. This will not in any way interfere with the principle that, when the instrument is certified as recorded, it shall import notice of the contents from the time of filing; but that must be understood as in connection with an instrument properly recorded. As said above, the record is notice of just what it contains, no more and no less. The obligation of seeing that the record of an instrument is correct must properly rest upon its holder. If he fails to protect himself, the consequence cannot justly be shifted upon an innocent purchaser.

*Antonis v. Liberati,* 821 A.2d 666, 670 (Pa.Cmwlth.2003) (emphasis in original) (quoting *Prouty,* at 552), *appeal granted,* 577 Pa. 673, 842 A.2d 407 (2004).

Reliance on 21 P.S. § 357, a statute dealing with deeds, not mortgages and other impermanent transfers, is misplaced. Allowing improper indexing to serve as notice to the world is illogical, and the conclusion that 16 P.S. § 9853 conflicts with § 357's plain meaning is erroneous. In fact, the majority's abridged reading of § 357 actually renders 16 P.S. § 9853 meaningless. If proper recordation alone gives the world constructive notice of a mortgage, then there is no need to index the mortgages at all—recordation without indexing must suffice. Surely the legislature did not intend this absurd result.

For the foregoing reasons, I would hold that First Citizens National Bank did not have constructive notice of this mortgage, and offer my firm dissent.

Former Justice LAMB did not participate in the decision of this case.

Justice SAYLOR joins this dissenting opinion.