28 Pa. Commonwealth Ct. 396 (1977)
In the Matter of a Condemnation in fact and displacement by the Commonwealth of Pennsylvania, Department of Transportation, arising from acts, actions and failures and refusals to act by the said Department of Transportation concerning and with regard to Legislative Route 1078. Perfection Plastics, Inc., Appellant.
No. 1617 C.D. 1975.
Commonwealth Court of Pennsylvania.
Argued October 5, 1976.
January 31, 1977.
*397 Argued October 5, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.
*398 Richard D. Solo, with him Solo & Padova, for appellant.
Roy W. Feinstein, Special Assistant Attorney General, with him Robert W. Cunliffe, Deputy Attorney General-Chief Counsel, and Robert P. Kane, Attorney General, for appellee.
OPINION BY JUDGE BLATT, January 31, 1977:
Perfection Plastics, Inc. (Plastics) petitioned the court below for the Appointment of a Board of View pursuant to the Eminent Domain Code[1] (Code). Preliminary objections on the part of the Commonwealth were filed and sustained, and this appeal followed.
Plastics was the lessee of property at 4080-R Frankford Avenue, Philadelphia, where it manufactured advertising products. Late in 1970, the Commonwealth's Department of Transportation (PennDOT), announced plans to construct Legislative Route 1078, known as the Pulaski Highway, in the vicinity of the Plastics' plant. Bonds for the funding of the project were authorized, but formal acquisition of property was delayed because the Governor had not yet signed the necessary right-of-way plans. Soon after the public announcement of the construction plans, Plastics had been informed by a PennDOT representative that the proposed highway could involve the building here concerned, and, sometime in March of 1971, Plastics *399 requested that PennDOT give the property "early consideration," a procedure by which negotiations for amicable acquisition or actual condemnation of property may be accelerated. PennDOT failed to act on this request, and Plastics filed its petition for the appointment of viewers on October 12, 1972. It alleged compensable injury as a condemnee or, in the alternate, as a displaced person, resulting from an alleged de facto taking of its leasehold interest. PennDOT filed timely preliminary objections averring that Plastics had not been deprived of the use and enjoyment of its leasehold interest, had not been caused to vacate the premises, and had not suffered a taking of the property. After considering depositions and briefs, the lower court sustained the preliminary objections and dismissed Plastics' petition on the ground that it failed to state a cause of action.
In its memorandum opinion, the lower court correctly observed that preliminary objections to a petition for the appointment of viewers serve a broader purpose than preliminary objections in other cases because they are the means to challenge the legal sufficiency of the petition and to resolve all threshold legal issues. City of Philadelphia v. Airportels, Inc., 14 Pa. Commonwealth Ct. 617, 322 A.2d 727 (1974). The court, not the board of view, must determine the legal sufficiency of the claim. Jacobs v. Nether Providence Township, 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972).
Plastics has conceded that there has been no formal condemnation of the Frankford Avenue property but argues that the actions and inactions of PennDOT resulted here in a de facto taking. In order for a condemnee to prove that a de facto taking has occurred, he must show exceptional circumstances which have substantially deprived him of the use and enjoyment of his property. Petition of Cornell Industrial Electric, *400 Inc., 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). We believe that the lower court properly concluded here that Plastics was not deprived of the use and enjoyment of its leasehold interest by PennDOT's advertisement of the proposed plan, by its acquisition of nearby properties, or by its suggestion to Plastics that some of the property here concerned would probably be taken.
In the case of Hazleton Redevelopment Authority v. Hudock, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971), this Court held that approval and funding of a project by a condemning authority, issuance of notices to and negotiations with property owners, and actual acquisition of some properties were not sufficient to establish a de facto taking. Only where it has been shown that such actions have had some significant impact on the use of the property has a de facto taking been recognized. See Conroy-Prugh Glass Co. v. Commonwealth, 456 Pa. 384, 321 A.2d 598 (1974), where a landowner could no longer obtain tenants because of publicity about the imminence of condemnation.
It may be true that Plastics was in a financially dangerous situation which required an expansion of its operations and that it was economically unfeasible to expand at its then location in light of the probable condemnation of the property, but, where a property owner suspends the construction of improvements, even at the advice of the condemning authority, it has been clearly held that no de facto taking has occurred. County of Allegheny v. The Church of Jesus Christ, 14 Pa. Commonwealth Ct. 510, 322 A.2d 803 (1974).
Plastics could have remained as a tenant in the property here concerned for as long as it could continue to negotiate a lease with the owner, and, if a condemnation meanwhile occurred Plastics would then have been compensated for the loss of its leasehold *401 interest. Profit-Sharing Blue Stamp Company v. Urban Redevelopment Authority, 429 Pa. 396, 241 A.2d 116 (1968). But Plastics allowed its lease to expire on February 10, 1973, and, evidently on the advice of its counsel moved then to the premises of another company with which it had meanwhile merged. Even when a lessee has been permitted to remain in a property until the expiration of his lease, however, he suffers no compensable injury as a condemnee. Fisher v. Pittsburgh Public Parking Authority, 433 Pa. 113, 248 A.2d 849 (1969). And here he clearly did not remain.
We believe that, absent a showing of substantial interference with Plastics' use of the property, the lower court properly concluded here that there was no de facto taking.
Alternatively, Plastics argues that even if a de facto taking did not occur, it was forced to relocate with considerable expense. Consequently, it claims that it should be entitled to damages as a "displaced person." Section 201 of the Code, 26 P.S. § 1-201(8), defines a "displaced person" as
any condemnee or other person not illegally in occupancy of real property who moves or moves his personal property as a result of the acquisition for a program or project of such real property, in whole or in part, or as the result of written notice from the acquiring agency of intent to acquire or order to vacate such real property; and solely for the purpose of subsections (a) and (b)(1) and (b)(4) of section 601-A, as a result of such acquisition or written notice of intent to acquire or order to vacate other real property on which such person conducts a business or farm operation. (Emphasis added.)
*402 Plastics admits it never received an order to vacate, but it seeks to rely on various letters from PennDOT as "written notice of intent to acquire." These letters, however, which were written by PennDOT in response to Plastics' inquiries, are carefully phrased in terms which emphasize the tentative nature of PennDOT's acquisition plans. They were sent in March and April of 1972 advising Plastics that "[i]t is anticipated that these plans will be completed by early summer; at this time we will expedite this claim," and that "[t]he offer on this property should be ready sometime this summer." However, in February 1972, before either of these letters was written, the president of Plastics had written to PennDOT stating that the company had decided that it "must move." We believe, therefore, that the lower court correctly concluded that Plastics' relocation in February of 1973 was not the result of any written notice of PennDOT's intention to acquire as required by the Code.
We also agree with the lower court that as a matter of law Plastics has failed to state a cause of action for damages compensable under the Code. We, therefore, affirm the order which sustained preliminary objections and dismissed Plastics' petition for the appointment of a board of view.

ORDER
AND NOW, this 31st day of January, 1977, the order of the Court of Common Pleas of Philadelphia County sustaining the preliminary objections of the Commonwealth of Pennsylvania and dismissing the appellant's Petition for the Appointment of a Board of View is hereby affirmed.
NOTES
[1] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. § 1-101 et seq. Section 502(e), 26 P.S. § 1-502(e), permits the filing of a Petition for Appointment of Viewers when "there has been a compensable injury suffered and no declaration of taking therefor has been filed."