IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald R. Bindas,                           :
                                            :
                    Appellant               :
                                            :
            v.                              : No. 652 C.D. 2018
                                            : Argued: February 12, 2020
Commonwealth of Pennsylvania,               :
Department of Transportation                :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:    May 18, 2021


        Donald R. Bindas (Landowner) appeals from the February 26, 2018
order of the Court of Common Pleas of Washington County (trial court), which
sustained the preliminary objections (POs) filed by the Pennsylvania Department
of Transportation (Department), and dismissed Landowner's Petition for
Appointment of a Board of Viewers that was filed pursuant to Section 502(c) of
the Eminent Domain Code,[2] based on the Department's claimed easement on

_____

        [1] This case was assigned to the opinion writer before January 4, 2021, when Judge
Leavitt completed her term as President Judge.

        [2] 26 Pa. C.S. §502(c).  Section 502(c) states:
**(Footnote continued on next page…)**

Landowner's property (Property), located in South Strabane Township (Township), Washington County (County), pursuant to a highway right-of-way that was established through a 1958 Construction and Condemnation of Right of Way Plan (Plan),[3] which condemned the Property when it was owned by predecessors in title to the Property. We affirm.

The Property was once part of a larger tract previously owned by Otto and Rose Koehler (Koehlers) and E. Helene Carter (Carter). Reproduced Record

_____

**(continued…)**

**(c) Condemnation where no declaration of taking has been filed.--**

(1) An owner of a property interest who asserts that the owner's property interest has been condemned without the filing of a declaration of taking may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis of the petition.

(2) The court shall determine whether a condemnation has occurred, and, if the court determines that a condemnation has occurred, the court shall determine the condemnation date and the extent and nature of any property interest condemned.

(3) The court shall enter an order specifying any property interest which has been condemned and the date of the condemnation.

(4) A copy of the order and any modification shall be filed by the condemnor in the office of the recorder of deeds of the county in which the property is located and shall be indexed in the deed indices showing the condemnee as grantor and the condemnor as grantee.

[3] "A right-of-way is an easement, which may be created by an express grant. *Amerikohl Mining Co., Inc. v. Peoples Nat. Gas*, 860 A.2d 547 (Pa. Super. 2004) (citing *Merrill v. Mfrs. Light & Heat Co.*, [185 A.2d 573, 575 (Pa. 1962)])." *Berwick Township v. O'Brien*, 148 A.3d 872, 883 (Pa. Cmwlth. 2016).

2

(R.R.) at 293a-296a. On August 1, 1958, the Governor approved and signed the Plan, which provided for the construction of Interstate Route 70 (I-70), *id.* at 415a, effectively condemning the Property and subjecting it to an easement. The Commonwealth's Department of Highways, the Department's predecessor,[4] filed the Plan in its offices in Harrisburg and recorded it in the County Recorder's Office on August 12, 1958. *Id.* The Recorder's Office did not maintain an index for the plans that had been filed, loosely organizing the plans by the municipalities involved in an unlabeled filing cabinet.

When the Department of Highways filed the Plan thereby condemning the Property, just compensation was paid to the Koehlers and Carter. R.R. at 293a-296a. Although the Koehlers and Carter executed quitclaim deeds for the Property to confirm a settlement and the payment of just compensation for the condemnation, those deeds were not recorded. *Id.* at 122a-125a. However, subsequent deeds in the chain of title for the condemned Carter property set forth this highway easement. *Id.* at 114a, 406a-414a.

On September 16, 1976, the Koehlers conveyed their interest in the Property to the Washington County Tax Claim Bureau due to the non-payment of taxes. Frances and Cecilia Jaworski (Jaworskis) purchased the Property from the

---

[4] *See, e.g.*, Section 2001 of The Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §511 ("The Department of Transportation shall, subject to any inconsistent provisions in this act contained, exercise the powers and perform the duties by law vested in and imposed upon the said department, the Secretary of Transportation, the former State Highway Department, former State Highway Commissioner, the former Department of Highways, [and] the former Secretary of Highways . . . ."); Section 2003(e)(1) of the Administrative Code, 71 P.S. §513(e)(1) ("The Department of Transportation . . . shall have the power, and its duty shall be . . . [t]o acquire, by gift, purchase, condemnation or otherwise, land in fee simple or such lesser estate or interest as it shall determine, in the name of the Commonwealth, for all transportation purposes . . . .").

Tax Claim Bureau by a deed dated December 15, 1976, and later by a corrective deed dated January 13, 1977. R.R. at 262a-269a. The Property was identified in both deeds to the Jaworskis by former tax parcel number 60-4-1084. *Id.* at 241a, 262a. Landowner purchased the Property from the Jaworskis in 1977, and the deed referenced parcel identification number 600-004-00-00-0036-00. *Id.* at 184a-188a, 241a-245a, 247a-251a.

In 2015, the Department, through its contractor Golden Triangle Construction (Golden), began to construct a "diverging diamond interchange" on I-70. R.R. at 96a, 103a. As part of the project, a drainage system was installed on property located between I-70, Country Club Road and Locust Avenue in the Township. *Id.* at 105a. As part of the project, Golden constructed a retention pond in the easement for its drainage and mitigation needs in order to control and slowly release water into a perennial stream. *Id.* at 102a, 105a. Landowner immediately objected to the Department's trespass on the Property, which he considered to be his unencumbered land. *Id.* at 103a.

On April 7, 2016, Sheila Sten (Sten) performed a title search for Landowner regarding title to the Property. R.R. at 59a-60a. Sten did not find a record of the Department's interest in the Property or any reference to the 1958 Plan. *Id.* at 66a. Concurrently, the Department provided copies of the Plan to Sten and Landowner. *Id.* at 66a-67a, 71a. Also around this time, Sten found an unindexed microfiche copy of the Plan in the County Recorder's Office. *Id.* at 67a-68a, 70a. As a result, Landowner executed a corrective deed in 2016 that altered the boundaries of the Property. *See id.* at 416a-423a.

On August 8, 2016, Landowner filed a Petition for Appointment of a Board of Viewers (Petition) under Section 502 of the Eminent Domain Code in the

4

trial court. The Department filed POs to Landowner's Petition, asserting its right-of-way over the Property under the 1958 highway easement. The trial court held a hearing on September 5, 2017.

Sten testified that she searched records dating back to 1940 and the incorporated tax parcel 60-4-1084 from the 1968 tax map, which she referred to as the "old map." R.R. at 62a-64a. Sten acknowledged that she was not aware of the Property's proximity to the Interstate, and she did not think to look for highway right-of-way plans. *Id.* at 86a. She stated that in her initial 2016 search, she did not uncover an indexing or any claim by the Department. *Id.* at 66a.

Sten acknowledged that when she was informed of the claimed right-of-way, she found the Plan in microfiche form in an unlabeled drawer of a filing cabinet located at the County Recorder's Office. R.R. at 67a-68a, 71a. She testified that a highway plan should be found in a right-of-way book or a highway map. However, Sten stated that she had encountered issues before with highway plans and other title searches that were not indexed, adding that she frequently found "that documents pertaining to the interstate are not indexed, condemnations and so forth, you couldn't find them." *Id.* at 81a. Sten explained that, based on her experience, records of "older" condemnations, *i.e.*, those prior to the year 2000, are very difficult to find. *Id.* Reviewing her documents, Sten also said she that was able to physically locate an oil and gas lease from Landowner to Rice Drilling. *Id.* at 82a.

Sten also testified that the indexing of plans is performed by the County Recorder's Office. R.R. at 86a. She stated that the highway right-of-way easement that she found had been recorded. *Id.* at 87a. Sten also acknowledged

5

that she had been in the Recorder's Office many times and that she was aware of the filing cabinet, which contained the 1958 highway plans. *Id.* at 89a.

Ultimately, on February 26, 2018, the trial court issued a Memorandum Order sustaining the Department's POs in part and dismissing the Petition. In the Pa. R.A.P. 1925(a) opinion filed in support of its order, the trial court explained that Landowner had purchased the Property in 1977. Noting that Landowner executed a corrective deed to himself in 2016, the trial court accepted Landowner's description of the Property as the land between I-70, Country Club Road, and Locust Avenue. Trial Court 5/24/18 Op. at 2.

Because the Department asserted a highway easement over the Property based on the 1958 Plan, the trial court determined that the dispositive issue was whether the failure of the County Recorder's Office to index the 1958 Plan rendered the highway easement invalid. Trial Court 5/24/18 Op. at 3-4. The trial court recognized that in 1958, Section 210 of the State Highway Law[5]

---

[5] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-210. Section 210 states, in relevant part:

> The secretary is hereby empowered to change, alter, or establish the width, lines, location, or grades of any State highway or any intersecting road in any township, borough, or incorporated town, in such manner as, in his discretion, may seem best, in order to correct danger or inconvenience to the traveling public, or lessen the cost to the Commonwealth in the construction, reconstruction, or maintenance thereof. . . . Before any change . . . is made, the secretary shall first submit a plan of the proposed change . . . duly acknowledged to the Governor; and the same shall be approved by him, and filed as a public record in the office of the department and a copy thereof shall be recorded in the office for the recording of deeds in the proper county at the expense of the department in a plan book or books provided by the county for that purpose. ***The approval of such plan or plans by the Governor shall be***

**(Footnote continued on next page…)**

6

governed eminent domain proceedings with respect to properties taken for the construction of highways.[6] The trial court determined that Section 210 required the Department of Highways to: (1) develop a written plan; have the plan approved by the Governor; (2) file the plan as a public record in the office of the Department of Highways; and (3) file a copy of the plan in the office for the County Recorder of Deeds at the Department of Highways' expense and in a plan book provided by the County. *See id.* at 5. The trial court concluded that, in 1958, the Department of

---

**(continued…)**

> *considered to be the condemnation of an easement for highway purposes from all property within the lines marked as required for right of way and the condemnation of an easement of support or protection from all property within the lines marked as required for slopes.* All plans or orders so approved, filed and recorded, shall indicate the names of the owners or reputed owners of the land affected by taking or vacation and of lands abutting the same. *It shall be the duty of the recorder of deeds of each county to provide a plan book or books for the recording of such plans and orders, and to maintain an adequate locality index for the same.*

Emphasis added.

[6] As this Court has explained:

> The procedure by which the Department condemned property abutting state highways changed when the Eminent Domain Code [] was enacted. Act of June 22, 1964, [P.L. 84, *as amended*, *formerly* 26 P.S. §§1-101–1-903, repealed by the Act of May 4, 2006]. Prior to that enactment, pursuant to Section 210 of the State Highway Law, []to change, alter, or establish a state highway, the Department was required simply to file a condemnation plan with the Pennsylvania governor who ultimately had the power to approve or disapprove the plan.

*Faleski v. Department of Transportation*, 633 A.2d 1308, 1309 n.2 (Pa. Cmwlth. 1993).

7

Highways completed all of these tasks and that the failure to index the plan following its recording was the fault of the County Recorder's Office. *Id.* at 5-6.

The trial court rejected Landowner's argument that the failure of the County Recorder's Office to index the Plan prevented the world from having notice of the condemnation, explaining:

> Some, but not all, of the deeds expressly refer to the Highway easement and condemnation. Because the property is a small parcel between a major highway and a local road, a search for the Highway Plan would be warranted by a prospective buyer. The Plan was available in the [County] Recorder's Office. A [Department] employee, who was aware that a Plan was filed in 1958, was able to locate the Plan within the drawers in the [County Recorder's Office] within five minutes or so. [R.R. at 119a.]

Trial Court 5/24/18 Op. at 6.

The trial court noted that the Supreme Court has not addressed whether the failure of a County Recorder's Office to index a plan pursuant to Section 210 of the State Highway Law invalidates an otherwise properly executed condemnation under its provisions. However, the trial court observed that in *First Citizens National Bank v. Sherwood*, 879 A.2d 178, 181-82 (Pa. 2005) (*First Citizens*), the Supreme Court determined that a properly recorded *mortgage* was deemed to provide constructive notice to all, pursuant to Section 2 of the Act of April 24, 1931, P.L. 48, 21 P.S. §357,[7] despite the fact that it had been defectively

---

[7] Section 2 states:

> The legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements of the fact of the granting of such rights or privileges and/or of the

**(Footnote continued on next page…)**

8

indexed.[8]  The trial court concluded: "This case is analogous to that.  A defective indexing does not invalidate the instrument."  Trial Court 5/24/18 Op. at 7.

As the trial court explained:

> [The Department of Highways] purchased this property from the Koehlers and Carter through

---

**(continued…)**

> execution of said releases, and the rights of the subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements shall be limited thereby with the same force and effect as if said subsequent purchasers, mortgagees, and/or judgment creditors had actually joined in the execution of the agreement or agreements aforesaid.

[8] The purchaser in *First Citizens* had searched a county mortgage index and found no encumbrances.  After the purchase was made, the purchaser learned of a mortgage on the property that had been properly recorded, but not indexed.  As a result, the purchaser brought a quiet title action against the mortgagee, and the trial court granted summary judgment in favor of the purchaser.  On the mortgagee's appeal, the Superior Court held that the purchaser would not be deemed to have notice of a prior lien so long as a diligent search would not have uncovered the lien.  However, on further appeal, the Supreme Court reversed, relying on the plain language of Section 2 of the Act of April 24, 1931.  The Supreme Court reasoned that, per Section 2,

> the legal effect of the recording of a written agreement such as a mortgage is to give subsequent purchasers constructive notice of the mortgage.  There is no ambiguity in the statute.  There is no scope for us to read into that statute an equitable exception whereby a subsequent purchaser may be excused from constructive notice when the mortgage was properly recorded but improperly indexed.

879 A.2d at 181.  The Supreme Court rejected the purchaser's assertion that Section 3 of the Act of March 18, 1875, P.L. 32, 16 P.S. §9853, stating that "[t]he entry of recorded deeds and mortgages in said indexes, respectively, shall be notice to all persons of recording of the same," created a negative inference that a subsequent purchaser lacked notice if a mortgage was *not* properly indexed.  *Id.* at 181-82.  Finally, the Supreme Court also rejected the purchaser's public policy argument, reasoning that because the statutory language was unambiguous, the Court could not decline to apply it on the basis that there might be better policy options.  *Id.* at 182.

condemnation in 1958. [The Department of Highways] paid them and the property owners tendered a quitclaim deed. [Landowner] is asking this Court to divest that property from [the Department of Highways] because a third party, the [County Recorder's Office] failed to properly index a properly recorded document. The Court will not do so. [Landowner] did not meet his heavy burden to establish that a *de facto* taking occurred. The Preliminary Objections were properly sustained and the case was dismissed.

Trial Court 5/24/18 Op. at 7.

The trial court rejected Landowner's assertion that Section 210 of the State Highway Law imposes a duty on the Department of Highways "to ensure the Plan was properly recorded in a Plan Book and indexed," observing that the Department of Highways "had no reason to know or question the [County] Recorder's Office. They maintained the Plan within their office. They received confirmation and reference numbers that the Plan was in a Book in the [County Recorder's Office]." Trial Court 5/24/18 Op. at 7. In sum, the trial court concluded that "[t]he [State] Highway Law placed the burden on the [County Recorder's Office]. [Landowner] points to no law or case which imposes a duty [on the Department of Highways]." *Id.* at 8.

Finally, the trial court specifically noted that "Section 210 [of the State Highway Law] states that '[t]he approval of such plan or plans by the Governor shall be considered to be the condemnation.' The law does not impose a duty on the Commonwealth to ensure the local recording office has performed its duties." Trial Court 5/24/18 Op. at 8. Based on the foregoing, the trial court issued the instant order sustaining the Department's POs in part and dismissing Landowner's Petition, and Landowner then filed this appeal from the trial court's order.

10

On appeal,[9] Landowner claims that trial court erred in determining that the Department of Highways properly condemned the Property pursuant to Section 210 of the State Highway Law because, although the Department of Highways recorded the Plan in the County Recorder's Office, the County Recorder's Office failed to record a copy of the Plan in a plan book and did not index the Plan in a locality index. Landowner also contends that the trial court erred in determining that the Department or its predecessor, the Department of Highways, had no duty to ensure the Plan was recorded and indexed in accordance with Section 210 of the State Highway Law. We do not agree.

As a preliminary matter, we note that a party asserting a *de facto* taking carries the heavy burden of proving that a *de facto* taking has, in fact, occurred. *Riedel v. County of Allegheny*, 633 A.2d 1325, 1328 (Pa. Cmwlth. 1993). In this case, because the Department of Highways effectuated a valid condemnation of the Property in 1958 pursuant to the requirements of Section 210 of the State Highway Law, no *de facto* taking of an easement interest that the Department already owns has occurred, and, therefore, Landowner cannot meet his burden of proof. *See, e.g.*, *Appeal of Northeast Outdoor Advertising, Inc.*, 452

---

[9] "'Preliminary objections are the exclusive method under the [Eminent Domain] Code of raising objections to a petition for the appointment of a board of viewers alleging a *de facto* taking.'" *Appeal of Graff*, 827 A.2d 544, 547 n.3 (Pa. Cmwlth. 2003) (citation omitted). Preliminary objections to a petition for the appointment of a board of viewers are much broader in scope than preliminary objections in other civil cases because they are the procedural method by which all threshold legal issues are resolved. *Appeal of Perfection Plastics, Inc.*, 368 A.2d 917, 918 (Pa. Cmwlth. 1977). Preliminary objections are the proper means by which to challenge the legal sufficiency of the claims in the petition for appointment of a board of viewers. *Id.* "On appeal, this Court may overturn a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers only where necessary findings of fact are not supported by competent evidence or an error of law was committed." *Appeal of Graff*, 827 A.2d at 547 n.4 (citation omitted).

A.2d 81, 83 (Pa. Cmwlth. 1982) (denying a *de facto* taking claim where the Department removed billboards illegally placed in the Department's right-of-way).[10]

As clearly stated in the current version of Section 210, the approval of the Plan by the Governor as filed and recorded in the County Recorder's Office effectuated the Department of Highways' condemnation of its right-of-way interest in the Property. *See* 36 P.S. §670-210 ("*The approval* [*of plans*] *by the Governor shall be considered to be the condemnation of an easement . . . .*") (emphasis added); *Smith v. Commonwealth*, 40 A.2d 383, 384 (Pa. 1945) (construing the predecessor of Section 210 that included identical language establishing a firm date of condemnation). *See also Appeal of City of Harrisburg*, 107 A.2d 868, 870 (Pa. 1954) (construing similar language in Section 208 of the State Highway Law, 36 P.S. §670-208,[11] as providing for condemnation on the date of the Governor's

_____

[10] This "Court may affirm the trial court for any reason so long as the basis of [the] decision is clear." *Schenck v. Township of Center*, 893 A.2d 849, 853 (Pa. Cmwlth. 2006), *appeal dismissed*, 975 A.2d 591 (Pa. 2009).

[11] Section 208 states, in relevant part:

> No person shall be entitled to damages by reason of such establishment of the ultimate width and lines of a State highway for future construction; and, where the Commonwealth, by its proper authorities, has improved or constructed or shall hereafter improve or construct such State highway and, in so doing, has taken or shall take a part only of the lands lying within the lines shown by such plan, damages shall be allowed for and to the extent of such actual taking only. Such taking shall be deemed to occur only when right of way plans or construction drawings, prepared by the department, showing thereon the right of way required for highway purposes and for slopes, shall have been approved by the secretary and the Governor and filed as a public record in the office of the department.

12

approval of the highway plan as filed and recorded). Indeed, the Supreme Court has specifically held that Section 210 "authorizes the Secretary of Highways to take current action for highway purposes and provides that the Governor's approval shall be considered to work a condemnation." *Appeal of Commonwealth*, 221 A.2d 289, 291 (Pa. 1966).

Not only did the Department of Highways follow the proper procedures as set forth in Section 210 of the State Highway Law to condemn a right-of-way with respect to the Property in 1958, the Department of Highways also clearly compensated the owners of the Property for that taking at that time. *See* R.R. at 122a-125a, 293a-296a. The trial court specifically found that the Department established that all of the actions necessary for the condemnation of the Property occurred in 1958, including the payment of just compensation to the owners of the Property at that time. This determination is consistent with the presumption that a property owner at the time of a taking was compensated for the resultant damages incurred following the passage of 20 years. *Coxe v. Lehigh Valley Railroad Company*, 158 A.2d 782, 786 (Pa. 1960); *Florek v. Department of Transportation*, 493 A.2d 133, 136 (Pa. Cmwlth. 1985).

"It is clear that '[n]othing is more firmly settled in the law than the fact that the owner of land at the time of condemnation by eminent domain proceedings is entitled to any damages which result from the condemnation . . . .' *Smith*, [40 A.2d at 384]." *Chapleski v. Department of Highways*, 291 A.2d 360, 362 (Pa. Cmwlth. 1972). Moreover, "[t]he right to damages for a condemnation proceeding belongs solely to the owner of the property and does not pass to a subsequent purchaser. *Synes Appeal*, [164 A.2d 221, 223 (Pa. 1960)]." *Florek*, 493 A.2d at 136.

Moreover, the failure of the County Recorder's Office to properly record the Plan in a plan book nor index the Plan in a locality index does not affect the validity of the Department of Highways' condemnation of the Property, and the Department of Highways' recording of the Plan in the County Recorder's Office provided Landowner with constructive notice of the Department's easement.[12] As this Court has explained:

> The [State Highway] Law provides that all such plans, as proposed by the Secretary of Highways and approved by the Governor, must be filed as a public record with the Department of Highways and recorded in the appropriate county. The filing of the plan in the county office for the recording of deeds constitutes constructive notice of the condemnation to all affected landowners. *Pane v. Department of Highways*, [222 A.2d 913 (Pa. 1966)]; *Strong Appeal*, [161 A.2d 380 (Pa. 1960)].

*Department of Transportation v. McGowan*, 450 A.2d 232, 234 (Pa. Cmwlth. 1982) (footnote omitted).

In this case, the Department acquired its interest in the Property by the signed Plan that was recorded in the County Recorder's Office on August 12, 1958. R.R. at 116a-119a, 415a. The Plan stated the names of all the relevant landowners affected by the condemnation. *Id.* at 286a, 399a. The Plan was signed by the Governor, the Secretary of Highways, and the County Recorder when it was recorded in the County Recorder's Office. *Id.* at 116a-118a, 415a. A copy of the Plan was also retained by the Department of Highways as required by Section 210 of the State Highway Law. *Id.* at 118a, 415a. Moreover, Section 210 plainly states

---

[12] Landowner's reliance on *Prouty v. Marshall*, 74 A. 550 (Pa. 1909), in this regard is misplaced. *See, e.g., First Citizens*, 879 A.2d at 181-82 ("In *Prouty*, the mortgage in that instance was not only improperly indexed but also defectively recorded. In this matter, it is without question that the mortgage was properly recorded.").

14

that it "shall be the duty of the recorder of deeds of each county to provide a plan book or books for the recording of such plans and orders, and to maintain an adequate locality index for the same."  36 P.S. §670-210.  *See also First Citizens*, 879 A.2d at 181 ("There is no ambiguity in the statute.  There is no scope for us to read into that statute an equitable exception whereby a subsequent purchaser may be excused from constructive notice when the mortgage was properly recorded but improperly indexed.").

Furthermore, the chain of title of the Carter property that Landowner purchased specifically referenced the portion of the Property that the Department of Highways condemned in the Plan that was recorded in the County Recorder's Office:

> EXCEPTING. and RESERVING therefrom and thereout the greater portion of the above described tract, condemned by the Commonwealth of Pennsylvania for highway purposes for a limited access highway as shown on Sheet No. 44 of Right of Way Plan for Route No. 798, Section No. 1-A, Washington County, as approved by the Governor on August 1, 1958; the portion so taken being situated between [the enumerated] Stations [] on the left side of the road.

R.R. at 409a.  *See also* Landowner's 2016 Corrective Deed, R.R. at 419a ("**UNDER AND SUBJECT** to the exceptions, reservations, and conditions set forth or mentioned in deeds in the chain of title.").

As the Pennsylvania Superior Court has observed:

> Our law provides that "[i]t is always the duty of a purchaser of real estate to investigate the title of his vendor [,]" and the purchaser must exercise due diligence in this regard.  *Ohio River Junction R. Co. v. Pennsylvania Co.*, [72 A. 271, 273 (Pa. 1909)].  The Supreme Court of Pennsylvania has explained the due diligence obligation as follows:

15

[Purchasers'] title could be affected only with what they actually or constructively knew at the time of the purchase; necessarily, as to the latter, by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the [title], and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and in the various courts of record whose territorial jurisdiction embraced the land in dispute; but not of that which they could not have learned by inquiry of those only whom they had reason to believe knew of the facts.

*Lund v. Heinrich*, [189 A.2d 581, 585 (Pa. 1963)] (internal citations omitted). Accordingly, a purchaser fulfills his or her due diligence requirement when he or she examines the documents recorded in the county or counties in which the property is situated and when he or she asks the possessor about title, as well as any other people the purchaser has reason to believe would know about the status of the property's title.

*Nolt v. TS Calkins & Associates, LP*, 96 A.3d 1042, 1048 (Pa. Super. 2014) (footnote omitted). Thus, Landowner had both actual and constructive notice of the Department of Highways' recorded Plan affecting the Property, and had a duty of due diligence to determine the extent of the Department's interest in the Property.

Based on the foregoing, the Department of Highways properly condemned the Property pursuant to Section 210 of the State Highway Law because the Department of Highways recorded the Plan in the County Recorder's Office as required, and just compensation was paid to the Property's owners at the time that the condemnation occurred. As a result, the trial court did not err in sustaining the Department's POs in part and in dismissing Landowner's Petition.

16

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald R. Bindas,                      :
                                       :
                     Appellant         :
                                       :
         v.                            :  No. 652 C.D. 2018
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation           :

# **O R D E R**


     AND NOW, this <u>18th</u> day of May, 2021, the order of the Washington County Court of Common Pleas dated February 26, 2018, is AFFIRMED.


                           _____

                           MICHAEL H. WOJCIK, Judge

Donald R. Bindas, :
            Appellant :
            :
           v. :
            :
Commonwealth of Pennsylvania, : No. 652 C.D. 2018
Department of Transportation : Argued: February 12, 2020


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                           FILED: May 18, 2021


      I join in Judge Ceisler's well-reasoned Dissenting Opinion, and write separately to express my belief that based on established precedent, it was the Commonwealth of Pennsylvania, Department of Highways' (Department of Highways) burden to ensure proper recording **and** indexing, and it failed to do so here. I believe *Prouty v. Marshall*, 74 A. 550 (Pa. 1909), controls the instant outcome. In *Prouty*, the Pennsylvania Supreme Court explained:

> Both recording and indexing were alike defective, and **<u>each of the defects was fatal</u>** to the claim of the mortgagee. The failure to index properly is made so by the [A]ct of March 18, 1875 (P.L. 32) [(1875 Act)], which, after requiring, in the first section, the recorder to prepare and keep two general indexes, the one direct, and the other ad sectum, of all mortgages recorded in his office, goes on to provide: 'Sec[tion] 2. As soon as said indexes are prepared, it shall be the duty of the recorder to index in its appropriate place and manner every deed and mortgage thereafter recorded in

his office, at the time the same is recorded; and in case he neglects to do so, he and his sureties shall be liable in damages to any person aggrieved by such neglect.'

*Prouty*, 74 A. at 551 (emphasis added).

Notwithstanding the recorder's statutory duty to properly record and index deeds and mortgages, the *Prouty* Court concluded:

> In the case at bar, **the duty was upon the mortgagee to give notice that** [**a mortgage had been executed to her**] **upon the premises in question**. If from any cause she fell short of giving legal notice, the consequence must fall upon her. **She cannot hide behind the mistake of the recorder**. **It is an easy matter for a mortgagee**, **or a grantee in each particular instance**, **either in person**, **or by a representative**, **to look at the record**, **and see that the instrument has been properly entered**. The instrument itself is at hand. The names of the parties are known, and comparisons are easily made. How would it be possible for a subsequent purchaser to know anything about the facts? The duty thus imposed upon the mortgagee in this respect, involves no more, and no less, than is required of a mortgagee, for his own protection, when before the money is paid out upon the loan, an inspection of the judgment indexes is necessary to see whether or not a judgment has been entered against the mortgagor upon the same day on which the mortgage is recorded. Some care must be exercised in every such transaction. **There is every reason why it should be made the duty of the mortgagee to see that his instrument is properly recorded**. This will not in any way interfere with the principle that, when the instrument is certified as recorded, it shall import notice of the contents from the time of filing; but that must be understood as in connection with an instrument properly recorded. As said above, the record is notice of just what it contains, no more and no less. **The obligation of seeing that the record of an instrument is correct**, **must properly rest upon its holder**. **If he fails to protect himself, the consequence cannot justly be shifted upon an innocent purchaser**.

*Id*. at 552 (emphasis added).

The Majority distinguishes *Prouty* on the basis that therein, the instrument was both defectively recorded and improperly indexed and that here, "the Department of Highways' recording of the Plan in the County Recorder's Office provided [Donald R. Bindas] with constructive notice of the [Pennsylvania Department of Transportation's] easement." Majority Op. at 14. As the *Prouty* Court made clear, in that case, "**each** of the defects was fatal to the claim . . . ." *Id*. at 551 (emphasis added). Further, Pennsylvania Courts have repeatedly applied the following principle: "**The person offering an instrument for record has a duty to see that it is properly recorded and properly indexed**, **and cannot hide behind a mistake of the recorder**." *In re 250 Bell Rd., Lower Merion Twp., Montgomery Cnty.*, 388 A.2d 297, 300 n.3 (Pa. 1978) (emphasis added); *see also Commonwealth v. Roberts*, 141 A.2d 393 (Pa. 1958); *U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627 (Pa. Cmwlth. 2015); *Commonwealth Fed. Sav. & Loan Ass'n v. Pettit*, 586 A.2d 1021 (Pa. Cmwlth. 1991).

In *Antonis v. Liberati*, 821 A.2d 666 (Pa. Cmwlth. 2003), this Court held:

> The trial court properly . . . [found] that *Prouty's* admonition that '[i]t is an easy matter for a mortgagee . . . either in person, or by a representative, to look at the record, and see that the instrument has been properly entered[,]' imposed an obligation on [a recording party's attorney], by law, to ensure that the documents were properly recorded . . . .

*Antonis*, 821 A.2d at 670 (emphasis omitted).

Later, after the Pennsylvania Supreme Court in *First Citizens National Bank v. Sherwood*, 879 A.2d 178 (Pa. 2005), held that a properly recorded, but defectively indexed mortgage provided constructive notice, the General Assembly amended the relevant statute to require both proper recording *and* proper indexing for

constructive notice.[1]  The General Assembly's action effectively addressed the concerns voiced in a dissent to *Sherwood* penned by former Justice Eakin, joined by Justice Saylor, relying upon both *Prouty* and *Antonis*.  Justice Eakin stated:

> The duty of indexing mortgages and deeds is placed on the Recorder of Deeds, **but as between the parties**, **the mortgagee ultimately bears the risk of improper indexing**.  Section [3 of the 1875 Act] specifically addresses the subject of notice: 'the entry of recorded deeds and mortgages *in said indexes*, respectively, shall be notice to all persons of recording of the same.'  [Section 3 of the Act of March 18, 1875, P.L. 32,] 16 P.S. § 9853.  Clearly, the absence of good indexing cannot be good notice.  In order to protect its interest and place those who may later search on constructive notice, . . . **the mortgagee must bear the burden of checking the proper indexes after recordation to insure that the Recorder of Deeds properly indexed and recorded the mortgage**.  **This is a small burden indeed for the mortgagee -- it is an impossible burden to place on the public**.  **It is the mortgagee who asks for the mortgage in return for advancing money**.  **It is the mortgagee that files the mortgage in order to protect its security interest**.  *Prouty*, [74 A.] at 551 ('[A mortgagee] cannot hide behind the mistake of the recorder.').

*Sherwood*, 879 A.2d at 184-85 (Eakin, J., dissenting) (bold emphasis added).

Like the statutes at issue in *Prouty*, Section 210 of the Highway Law[2] imposes a duty on the Recorder of Deeds Office to record plans and maintain indexes; however, that provision does not explicitly allocate the risk of defective recording or indexing **as between the parties**.  Nonetheless, consistent with *Prouty*, I would hold that well-established principles recognizing the importance of notice, imposing the duty upon the "person offering an instrument for record" apply equally to

---

[1] Section 1 of the Act of April 24, 1931, P.L. 48, *as amended*, added by the Act of July 7, 2006, P.L. 596, 21 P.S. § 358 (requiring proper indexing in order for constructive notice to be found).

[2] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670-210.

condemnation under Section 210 of the Highway Law. *In re 250 Bell Rd.*, 388 A.2d at 300 n.3. Accordingly, I would reverse the trial court's order.

                                            _____
                                            ANNE E. COVEY, Judge

Judge Ceisler joins in this dissenting opinion.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald R. Bindas,                        :
              Appellant              :
                                        :
       v.                              : No. 652 C.D. 2018
                                          : ARGUED: February 12, 2020
Commonwealth of Pennsylvania,            :
Department of Transportation             :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE ELLEN CEISLER, Judge

## OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE CEISLER                   FILED: May 18, 2021

I respectfully disagree with the Majority's conclusion that the Construction and Condemnation of Right of Way Plan (1958 Plan) filed by the Commonwealth of Pennsylvania Department of Highways (Department of Highways) was valid and, thus, no *de facto* taking of Donald R. Bindas's (Landowner) property occurred. Unlike the Majority, I cannot conclude that there was no *de facto* taking simply because the 1958 Plan was approved by the Governor of the Commonwealth of Pennsylvania (Governor) and filed with the Washington County Recorder of Deeds Office (Recorder of Deeds Office). The plain language of Section 210 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670-210, *also* requires that a highway plan be *recorded in a plan book* and *indexed in a locality index* by the Recorder of Deeds Office. Neither action occurred here.

Under the Statutory Construction Act of 1972, statutes providing for the power of eminent domain are to be strictly construed. 1 Pa. C.S. § 1928(b)(4). Statutes also must be construed to give effect to all of their provisions, if possible. 1 Pa. C.S. § 1921(a). In this case, I believe the Washington County Court of Common Pleas (Trial Court) violated these established tenets of statutory construction by ignoring the provisions of Section 210 of the State Highway Law requiring the proper recording and indexing of a highway plan.

In *Department of Transportation v. McGowan*, 450 A.2d 232, 234 n.7 (Pa. Cmwlth. 1982) (emphasis added), this Court recognized the necessity of properly recording state highway easements with the county, stating:

> *Absent proper recording in the county, the Commonwealth could not establish that a valid condemnation had occurred under [Section] 210 [of the State Highway Law], since constructive notice would be missing and the trial court found that actual notice was never given.* Of course, due process requires either direct or indirect notice to a landowner that his land is being taken by eminent domain. *Angle v. Commonwealth*, . . . 153 A.2d 912 ([Pa.] 1959).

The testimony presented at the hearing before the Trial Court further demonstrates why a highway plan must be properly recorded and indexed in order to provide notice to affected landowners. Vincent Klmacko, a 16-year Department of Transportation (DOT) employee who knew of the existence of the 1958 Plan, testified that he located the 1958 Plan in the Recorder of Deeds Office "within five minutes or so." Notes of Testimony, 9/5/17, at 88. However, Sheila Sten, a title searcher in Washington County for 33 years, testified that she did not discover the 1958 highway easement in her original title search of the Property. *Id.* at 28-29, 35. After subsequently being informed of the 1958 Plan by Landowner's counsel, Ms. Sten found a packet of microfilm cards containing the 1958 Plan in an unlabeled

filing cabinet drawer in the Recorder of Deeds Office. *Id.* at 35, 37, 88. The cards were not indexed, and Ms. Sten had to search through several drawers to find them. *Id.* at 37. Ms. Sten's inability to locate the 1958 Plan through a traditional title search demonstrates why proper recording and indexing are necessary to achieve condemnation.

In *Prouty v. Marshall*, 74 A. 550 (Pa. 1909), our Supreme Court recognized that the obligation to ensure that an instrument is recorded lies with *the person or entity seeking recordation of the instrument* – in this case, the Department of Highways. The Supreme Court held that with respect to legal instruments, such as deeds and mortgages, it is the duty of the person offering an instrument for record to ensure that the instrument is properly recorded and indexed. *Id.* at 552. The Supreme Court reasoned that "[the mortgagee] cannot hide behind the mistake of the recorder. *It is an easy matter for a mortgagee, or a grantee in each particular instance, either in person, or by a representative, to look at the record, and see that the instrument has been properly entered*." *Id.* (emphasis added). Applying the Supreme Court's reasoning in *Prouty*, I believe the Department of Highways had a duty to ensure that the 1958 Plan was properly recorded and indexed after presenting the Plan to the Recorder of Deeds Office for filing. To rule otherwise would contravene *Prouty* and the express requirements of Section 210 of the State Highway Law.

The Majority disregards *Prouty* because in that case, the mortgage was not properly recorded *or* indexed. The Majority instead relies on *First Citizens National Bank v. Sherwood*, 879 A.2d 178 (Pa. 2005), wherein our Supreme Court held that a properly recorded mortgage provided constructive notice, even though it had been

EC - 3

defectively indexed.[1] In doing so, the Majority appears to conclude that the 1958 Plan was properly recorded simply because DOT presented the Plan to the Recorder of Deeds Office for filing. I cannot agree with this conclusion.

Although the 1958 Plan was marked "filed" by the Recorder of Deeds Office and was assigned a volume and page number, the 1958 Plan was never actually recorded in a plan book. Rather, a copy of the 1958 Plan was discovered on a microfiche card in an unlabeled drawer in the Recorder of Deeds Office. Because Section 210 of the State Highway Law explicitly requires that a highway plan be "*recorded in a plan book or books* provided by the county [recorder of deeds] for that purpose," 36 P.S. § 670-210 (emphasis added), I would conclude that the 1958 Plan was *not* properly recorded and, therefore, *First Citizens* is distinguishable from this case.

---

[1] Following *First Citizens*, the General Assembly amended the statute at issue in that case to specify that both proper recording *and* proper indexing are required for constructive notice, as follows:

> *In order for a document presented for record to the office of a recorder of deeds of a county to be constructive notice for the purpose of this act . . . or otherwise*, the document *shall be recorded, and one of the following conditions shall be satisfied*:
>
> (1) In counties where the [A]ct of January 15, 1988 (P.L. 1, No. 1), known as the "Uniform Parcel Identifier Law," applies, the uniform parcel identifier is endorsed or included on the document, and it is *indexed properly in an index arranged by uniform parcel identifiers. . . .*
>
> (2) The document is *indexed properly as to the party in all alphabetical indices.   . . .* For purposes of this section, the term "document" means *a document that is eligible to be recorded in the office of the recorder of deeds*, including, but not limited to, *deeds, mortgages, quitclaim deeds, memoranda of lease and easements*, and includes documents presented for record in person, by mail, electronically or in any other manner.

Section 1 of the Act of April 24, 1931, P.L. 48, *as amended*, added by the Act of July 7, 2006, P.L. 596, 21 P.S. § 358 (emphasis added).

While it is true that Section 210 of the State Highway Law places the responsibility for recording and indexing highway plans on the county recorder of deeds offices, it would be unfair to permit DOT to condemn a landowner's property when all of the requirements of Section 210 have not been satisfied. The statute provides that DOT shall file the plan "and a copy thereof *shall be recorded in the office for the recording of deeds in the proper county at the expense of [DOT]*." 36 P.S. § 670-210 (emphasis added). Section 210 further provides that "[i]t shall be *the duty of the recorder of deeds of each county to provide a plan book or books* for the recording of such plans and orders, *and to maintain an adequate locality index* for the same." *Id.* (emphasis added). What recourse does an aggrieved landowner have when the Recorder of Deeds Office fails to satisfy its enumerated duties under the State Highway Law?

Our Court has recognized that "due process requires *either direct or indirect notice* to a landowner that his land is being taken by eminent domain." *McGowan*, 450 A.2d at 234 n.7 (emphasis added). Here, however, there is no evidence that Landowner had actual notice that his property was subject to the 1958 highway easement prior to this litigation. As for constructive notice, the Majority relies on the general description of the property in the deed to Landowner and the filing of the plan with the Recorder of Deeds Office in 1958. However, the key issue is whether the Department of Highways' filing of the plan – *absent the subsequent recording of the plan in a plan book and indexing of the plan* by the Recorder of Deeds Office – provided constructive notice to Landowner.

Under the Majority's interpretation of Section 210 of the State Highway Law, all that is required for property to be condemned by DOT is that the Governor approve the plan and that DOT present the plan to the county recorder of deeds office

for filing, without ever ensuring that the plan is properly recorded or indexed. Such an interpretation renders the remainder of Section 210 meaningless. Although Section 210 states that the Governor's approval "of such plan . . . shall be considered to be the condemnation of a[] [highway] easement," "such plan" is described in the prior sentence as a plan that is "*filed* as a public record in the office of [DOT] *and a copy thereof . . . recorded in the office for the recording of deeds in the proper county at the expense of [DOT] in a plan book or books provided by the county for that purpose*." 36 P.S. § 670-210 (emphasis added). Furthermore, Section 210 later references "[a]ll plans or orders *so approved, filed and recorded*," *id.* (emphasis added), indicating that *all three actions* are required for condemnation, and that "filing" and "recording" are not synonymous, as the Majority seems to suggest.

For these reasons, I would reverse the Trial Court's Order and remand this matter to the Trial Court for the appointment of a board of viewers.

_____
ELLEN CEISLER, Judge

President Judge Brobson and Judge Covey join in this Dissenting Opinion.